UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JEFFREY MORRIS, On Behalf of Himself and    :        08-CV-0592 (HB)
All Other Persons Similarly Situated,       :
                                            :
                          Plaintiff,        :
                                            :
            -against-                       :        **AFFIDAVIT**
                                            :
PLANET TOYS, INC. and CBS                   :
BROADCASTING, INC.                          :
                                            :
                          Defendants.       :
------------------------------------------------------------x

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )


      **LAUREN M. DAYTON**, an attorney admitted to practice before the courts of the State

of New York, affirms the following to be true under penalties of perjury:

      1.      I am associated with the firm of Kane Kessler, P.C., attorneys for the Defendants

Planet Toys, Inc. and CBS Broadcasting, Inc. in the above action, and I submit this affirmation,

pursuant to Federal Rules of Civil Procedure 12(b)(6), in support of Defendants' motion to

dismiss the Complaint in its entirety.  I am familiar with the circumstances giving rise to this

motion to dismiss.

      2.      In support of Defendants' motion to dismiss, annexed hereto is a true and correct

copy of the following documents:

                **Exhibit A**:    The License Agreement and all amendments between Planet Toys,
                              Inc. and CBS Broadcasting, Inc.

                **Exhibit B**:    Plaintiff's Complaint, dated January 23, 2008.

#285149.1

**WHEREFORE**, it is respectfully requested that Defendants' motion to dismiss the Complaint be granted in its entirety, together with such other, further relief as the Court deems just, proper, and equitable.

_Lauren M. Dayton_
LAUREN M. DAYTON

Sworn to before me this
25th day of March, 2008

_Cara M. Brownell_
Notary Public

CARA M. BROWNELL
Notary Public, State of New York
No. 01BR6003936
Qualified in Kings County
Commission Expires March 9, 2010

#285149.1

# EXHIBIT A



As of August 24, 2007

AMENDMENT C

Planet Toys Inc.
121 West 27th Street
Suite 604
New York, NY 10001

Attention: David Canner

Dear David:

Please refer to the Agreement between you and us dated as of June 22, 2004 (herein called the "Agreement") pursuant to which we have granted to you certain rights with respect to products associated with the television series entitled "CSI: Crime Scene Investigation" as specified therein.

You and we have agreed and do hereby agree, that effective as of the date hereof, the Agreement shall be amended as follows:

By deleting Paragraph II thereof in their entirety and substituting therefore the following new paragraph II.

II. Licensed Product: Science Kits to include: Reconstructive skull, DNA Analysis Kit, Forensic Lab, Handwriting Analysis Kit and DNA Strand Model Kit with Activities, Impression Kit, Field Kit, and Facial Recognition Forensic Art, and Fingerprint Kit.

Except as specifically amended above, all of the terms and conditions of the Agreement are in all other respects hereby ratified and confirmed.

Kindly sign below to indicate your acceptance of the foregoing.

Very truly yours,

ACCEPTED & AGREED:                    CBS Consumer Products
                                       CBS Enterprises
Planet Toys Inc.                       Division of CBS Broadcasting Inc.

By _____          By _____

M03-CSI-PT-1        9/21/07                    CBS Consumer Products
08/24/07                                       1700 Broadway, 33rd Floor
                                               New York, NY 10019



As of November 8, 2006

AMENDMENT B

Planet Toys Ltd.
121 West 27th Street
Suite 604
New York, NY 10010

Attention: David Canner

Dear David:

Please refer to the Agreement between you and us dated as of June 22, 2004 (herein called the "Agreement") pursuant to which we have granted to you certain rights with respect to products associated with the television series entitled "CSI: Crime Scene Investigation" as specified therein.

You and we have agreed and do hereby agree, that effective as of the date hereof, the Agreement shall be amended as follows:

By deleting Paragraph II and VI thereof in their entirety and substituting therefore the following new paragraph II and VI.

II. Licensed Product: Science Kits to include: Reconstructive skull, DNA Analysis Kit, Forensic Lab, Handwriting Analysis Kit and DNA Strand Model Kit with Activities, Impression Kit, Field Kit, and Facial Recognition Forensic Art.

VI. Royalties:     Royalty Rate: 10% of wholesale
                   Advance: $50,000 ($35,000 previously received)
                   $15,000 due upon signature
                   Guarantee: $50,000 (for term April 1, 2006 – March 31, 2008)
                   Payable as follows: See Paragraph 2.

Except as specifically amended above, all of the terms and conditions of the Agreement are in all other respects hereby ratified and confirmed.

Kindly sign below to indicate your acceptance of the foregoing.

                                         Very truly yours,

ACCEPTED & AGREED:                       CBS Consumer Products
                                         CBS Enterprises
Planet Toys Ltd.                         Division of CBS Broadcasting Inc.


By _____                      By _____

06M-CSI-PT-                                       CBS Consumer Products
11/8/06                                           1700 Broadway, 33rd Floor
                                                  New York, NY 10019
MOS-CSI-PT2



CBS
Consumer Products
A Unit of CBS Enterprises

As of February 6, 2006

Planet Toys Ltd.
121 West 27th Street
Suite 604
New York, NY 10010 10001 *RS 3/14/06*

Attention: David Canner

Dear David:

Please refer to the Agreement between you and us dated as of June 22, 2004 (herein called the "Agreement") pursuant to which we have granted to you certain rights with respect to products associated with the television series entitled "CSI: Crime Scene Investigation" as specified therein.

You and we have agreed and do hereby agree, that effective as of the date hereof, the Agreement shall be amended as follows:

By deleting paragraph II, IV and VI in their entirety and substituting therefore the following new paragraphs II, IV and VI.

II. Licensed Product: Science Kits to include: Reconstructive skull, DNA Analysis Kit, Forensic Lab, Handwriting Analysis Kit and DNA Strand Model Kit with Activities.

IV. License Term: April 1, 2004 – March 31, 2008

VI. Royalties:        Royalty Rate: 10% of wholesale
                      Advance: $35,000 ($10,000 previously received)
                       $25,000 due upon signature
                      Guarantee: $50,000 (for term April 1, 2006 – March 31, 2008)
                           Payable as follows: See Paragraph 2.

Except as specifically amended above, all of the terms and conditions of the Agreement are in all other respects hereby ratified and confirmed.

Kindly sign below to indicate your acceptance of the foregoing.

                                         Very truly yours,

ACCEPTED & AGREED:                       CBS Consumer Products
For and on behalf of                     CBS Enterprises
PLANET TOYS, LTD. INC HS 3/14/06         Division of CBS Broadcasting Inc.

By *Heidi Schwartz*                      By _____
Date 3/14/06                             Date 7/13/06

ILR# 06M-CSI-PT                          **CBS Consumer Products**
                                         1700 Broadway, 33rd Floor
                                         New York, NY 10019

*COPY*

# CBS CONSUMER PRODUCTS

## CBS Enterprises

## A Division of CBS Broadcasting Inc.

## LICENSE AGREEMENT

AGREEMENT made as of the 22nd of June 2004 by and between CBS CONSUMER PRODUCTS, CBS Enterprises, A Division of CBS Broadcasting Inc., 1700 Broadway, 33rd Floor, New York, New York 10019 (herein called "CBS") and Planet Toys Ltd., 200 Fifth Avenue, Suite 1139, New York, NY 10010 (herein called "Licensee").

I.     LICENSED PROPERTY:   The CSI: Crime Scene Investigation television program logo as set forth in Exhibit A attached hereto and hereby made a part hereof and such other CSI: Crime Scene Investigation television program logos that are licensed by CBS during the Term. And approved graphic images as provided by CBS.

II.    LICENSED PRODUCT:   Science kits to include: Reconstructive Skull, DNA Analysis Kit and Forensic Lab.

III.   LICENSE AREA (subject to subparagraph 4.(b) of the Terms and Conditions):   United States its territories and possessions.

IV.   LICENSE TERM:   April 1, 2004 – March 30, 2006.

V.    INITIAL ON-SALE DATE:   Fall 2004

VI.   ROYALTIES:     Royalty Rate:   10% on wholesale

Advance: $10,000 due upon signature

Payment: $10,000 due on or before September 30, 2005

Guarantee: $40,000

Payable As Follows:  See paragraph 2.

ILR#: 03M-CSI-PT
6/22/04

1

VII.    COPYRIGHT NOTICE: © 2004 CBS Broadcasting Inc. and Alliance Atlantis
Productions, Inc.  CSI: Crime Scene Investigation is a trademark of CBS Broadcasting Inc.

VIII.    TRADEMARK NOTICE: CSI: Crime Scene Investigation is a trademark of CBS
Broadcasting Inc.

IX.    RIGHTS GRANTED: The CSI: Crime Scene Investigation logo, graphic images, and
approved photographic images of talent and scenes from show as supplied by CBS.

X.    DISTRIBUTION:   All retail.


This Agreement includes the Terms and Conditions on pages 3 through 9 attached hereto
and hereby made a part hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of
the day and year first above written.


Planet Toys Ltd.

By _____

CBS CONSUMER PRODUCTS
CBS Enterprises
A Division of CBS Broadcasting Inc.

By _____

## TERMS AND CONDITIONS

1.    LICENSE.   CBS hereby grants to Licensee, and Licensee hereby accepts, an exclusive license to manufacture, advertise, distribute and make sales of the Licensed Product using the Licensed Property in the License Area during the License Term.

2.    PAYMENT.   For the license granted herein, Licensee will pay CBS royalties as follows:

(a)    the Royalty Rate shall be applicable to the net sales of the Licensed Product whether made by Licensee or by any "Distributor Company" as defined in paragraph 15.(d) hereof. As used herein "net sales" means the actual wholesale selling price of the Licensed Product actually shipped less shipping and handling charges, returns, customary discounts, sales tax and value added tax, if any, and less an allowance for bad debts not to exceed two percent (2%). Payment shall be to CBS Consumer Products at 1700 Broadway, 33rd Floor, New York, New York 10019 in United States dollars converted where necessary from the currency of sale at the rate of exchange for buying United States dollars as quoted in The Wall Street Journal (Eastern Edition) on the last day of the calendar quarter to which the payment applies. (If there are two rates for a currency, CBS's share shall be converted at the most favorable rate to CBS.) Royalties due for each calendar year quarter after the Initial On-Sale date hereof (the first such quarter to include any period of the License Term prior thereto) shall be paid to CBS within sixty (60) days after the last day thereof;

(b)    the Advance Against Royalties shall be paid to CBS upon execution hereof, and shall not be returnable in whole or in part to Licensee;

(c)    if at the time Licensee furnishes the statement required pursuant to subparagraph 12.(b) hereof, CBS has not been paid an amount at least equal to the Guaranteed Minimum Royalty, Licensee shall simultaneously with the furnishing of the said statement pay to CBS an amount equal to the difference between the Guaranteed Minimum Royalty (adjusted, if applicable in accordance with subdivision 11.(b)(ii) hereof) and the total Royalties paid to CBS to such time.

(d)    Timely payment as specified in paragraph 2 hereof shall be deemed of the essence of this Agreement. Without limiting CBS's remedies set forth in paragraph 11, Licensee shall pay CBS interest compounded daily on any and all late payments calculated at the prime rate as published in the Wall Street Journal for the date such payment is due or if the Wall Street Journal is not published on such date on the first business day thereafter on which the Wall Street Journal is published. Such interest shall begin on the day after such payment is due and shall continue through and including the date CBS actually receives full payment including the applicable interest thereon.

Concurrently with each payment of royalties pursuant to subparagraph (a) above, Licensee shall furnish to CBS a complete and accurate statement (certified by an officer of Licensee) showing the quantity and total dollar amount of the Licensed Product shipped by Licensee during the preceding calendar quarter. Acceptance by CBS of such payment and statement for any calendar quarter shall not, however, preclude CBS from thereafter questioning the accuracy thereof during a period ending two (2) years after the expiration or termination of this Agreement. During the License Term and for a period of two (2) years thereafter Licensee will keep and maintain at Licensee's principal place of business true and accurate books of account and records of all transactions which relate to or affect this Agreement or any provision thereof, which books and records together with supporting vouchers, invoices and the like shall be open for inspection by CBS or its representative (with the right to make copies thereof) during regular business hours. If upon examination by CBS of Licensee's accounts and records, an error shall be revealed

ILR#: 03M-CSI-PT
6/22/04

3

reflecting that CBS has been underpaid, Licensee shall pay CBS's reasonable costs incurred in connection with the examination.

3.     SAMPLES AND APPROVALS.  Prior to manufacture thereof, Licensee shall furnish to CBS for its approval a sample of the Licensed Product, together with proofs of the containers, labels, trademark usage, advertising, publicity and display materials proposed for use in connection therewith. Any change in the containers, labels, trademark usage, advertising, publicity and display materials for the Licensed Product shall be subject to CBS's prior approval.  Licensee shall also furnish CBS with product shots of each sku Licensee produces.  The product shots must be good quality digital files in illustrator format with a high resolution that clearly depicts the product.  Approval by CBS shall not, however, relieve Licensee of any of its warranties or obligations hereunder, and the Licensed Product (as well as the containers, labels, trademark usage, advertising, publicity and display materials used in connection therewith) shall strictly conform with the samples and proofs approved by CBS.  Promptly after initial production of the Licensed Product, Licensee will so notify CBS and will furnish CBS with twelve (12) samples of each Licensed Product.  During the continuance of this Agreement, Licensee

(a)     shall permit a representative selected by CBS access to Licensee's floor stock for sampling purposes at any time during normal business hours without advance notice;

(b)     shall sell additional quantities of the Licensed Product to CBS at the established United States price upon receipt of written request therefor.

4.     LICENSED PROPERTY.

(a)     Licensee recognizes the value of the good will and secondary meaning associated with the Licensed Property.  Licensee acknowledges that the Licensed Property (including all rights therein and good will associated therewith) shall as between Licensee and CBS be and remain the exclusive and complete property of CBS.  CBS reserves the right to lease, authorize or permit the use of the Licensed Property by third parties as CBS may see fit except as otherwise specified in this Agreement.  Licensee will not use or authorize the use of the Licensed Property in any manner, at any time or in any place not specifically licensed herein.

(b)     In the event the License Area includes territories outside of the United States, its territories and possessions (including Puerto Rico), Licensee should not and shall not authorize the distribution of Licensed Product containing Licensed Property in any territory outside of the United States, its territories and possessions (including Puerto Rico) without receiving CBS's prior written approval for such distribution for each such territory.

5.     LICENSED PRODUCT.   Licensee warrants and represents that the Licensed Product will be of the highest standard in style, appearance and quality; that the Licensed Product will conform to the specifications furnished by Licensee to CBS and if Licensee fails to furnish such specifications the Licensed Product will conform to the quality of the samples furnished pursuant to paragraph 3 hereof; that the Licensed Product will be manufactured, advertised, distributed and sold in accordance with all applicable federal, state and local laws and in a manner that will not reflect adversely upon CBS, its licensees or assignees; that the Licensed Product will be diligently advertised and distributed throughout the License Area; that Licensee will use commercially reasonable efforts to obtain maximum sales thereof in the License Area during the License Term; and that Licensee will not manufacture, advertise, distribute or sell and will not authorize the manufacture, advertising, distribution or sale of, the Licensed Product in any manner, at any time or in any place not specifically licensed herein. Licensee further warrants and represents that the Licensed Product will be distributed and sold hereunder for the sole purpose of retail

sales, and will not be distributed or sold on approval or on a consignment basis, nor as favors, premiums, giveaways, or tie-ins in connection with the sale and/or advertising of any other goods, wares, merchandise or services of any nature or description or be distributed under any similar method of merchandising.

6.    COPYRIGHTS.

(a)    Licensee shall place a notice of copyright on each Licensed Product and on each package or container used in connection therewith, and Licensee shall place a notice of copyright on each label, advertisement and promotional release concerning any Licensed Product, all in accordance with instructions from CBS, including without being limited to instructions with respect to position and letter size. No Licensed Product, package, container, label, advertisement or promotional release, upon which a notice of copyright is placed pursuant to the preceding sentence, shall contain any other copyright notice whatsoever unless CBS has given Licensee prior written consent therefor. Licensee shall cooperate fully with CBS in connection with CBS's obtaining of copyright protection in the name of CBS.

(b)    Licensee acknowledges and agrees that all copyrights and rights of copyright referred to in subparagraph (a) of this paragraph 6 in the name of and/or owned by CBS shall be and remain the sole and complete property of CBS; that all such copyrights and rights of copyright in the name of and/or owned by any copyright proprietor other than CBS or Licensee shall be and remain the sole and complete property of such copyright proprietor; that Licensee shall not at any time acquire or claim any right, title or interest of any nature whatsoever in any such copyright by virtue of this Agreement or of Licensee's uses thereof in connection with the Licensed Product; and that any right, title or interest in or relating to any such copyright which comes into existence as a result of, or during the License Term of, the exercise by Licensee of any right granted to it hereunder shall immediately vest in CBS.

7.    TRADEMARKS.

(a)    Licensee shall, during the conduct of its business hereunder, do everything commercially reasonable to protect and preserve CBS's trademark(s) throughout the License Area. In connection therewith, Licensee will comply with proper trademark usage in the labeling, advertising and sale of the Licensed Product and will comply with proper trademark usage and trademark laws of the United States and/or any other country in which the Licensed Product shall be sold, distributed or manufactured, with respect to the Licensed Product and all labels, packages, containers, advertisements and publicity. CBS shall from time to time advise Licensee what usage of the trademark(s) shall be proper and, generally, what the trademark requirements are which must be complied with. However, Licensee's obligations under this subparagraph shall be independent of the instructions of CBS. At the request of CBS, Licensee shall execute all documents necessary to procure, protect and preserve the aforesaid trademark rights, including but not limited to, applications for recordation of Licensee as a Registered User of the Trademark(s).

(b)    Licensee shall print, stamp or mold the trademark notice (specified in this Agreement) on each of the Licensed Product and on each label, package, container, advertisement and promotional release used in connection therewith, all in accordance with instructions from CBS, including without being limited to instructions with respect to position, design, and letter size. CBS may at any time and from time to time require Licensee to change the trademark notice by giving Licensee not less than thirty (30) days notice of such change. Licensee shall not use any trademark or trade name in connection with the Licensed Product without CBS's prior approval, which shall not be unreasonably withheld.

(c)    All trademarks which, and/or the right to use which, arise out of the license hereby granted to use the Licensed Property shall be and remain the sole and complete property of CBS; Licensee

shall not at any time acquire or claim any right, title or interest of any nature whatsoever in any such trademark by virtue of this Agreement or of Licensee's use thereof on or in connection with the Licensed Product. In the event that during the License Term, Licensee shall create any additional trademark or other proprietary right related to or arising out of the aforesaid trademarks, as a result of the exercise by Licensee of any right granted to it hereunder, such trademark or other proprietary right shall immediately vest in CBS and Licensee shall be authorized to use such new trademark or proprietary right as though same had specifically been included in this Agreement.

(d)    Upon expiration or termination of this Agreement, for any reason, Licensee will, subject to the provisions of paragraph 12 hereof, immediately cease all further use of the trademarks and all such trademarks and trademark rights shall forthwith revert to CBS. If deemed necessary, Licensee shall execute any requested written reassignment of such rights.

(e)    All usage by Licensee of any trademark shall inure to the benefit of CBS.

8.    INFRINGEMENTS.    Licensee shall promptly notify CBS of any unauthorized use or infringement by third parties of any rights granted to Licensee herein, and will cooperate fully in any action at law or in equity undertaken by CBS with respect to such unauthorized use or infringement (it being understood that all expenses in connection with such action shall be borne by CBS).

9.    WARRANTY AND INDEMNITY.

(a)    Licensee warrants and represents that Licensee is free to enter into and fully perform this Agreement; that all ideas, creations, materials and intellectual property furnished by Licensee in connection with the Licensed Product will be Licensee's own and original creation (except for matters in the public domain or material which Licensee is fully licensed to use including material licensed hereunder); and that the Licensed Product and the manufacture, advertisement, distribution and sale thereof hereunder will not infringe upon or violate any rights of any third party of any nature whatsoever. Licensee will at all times indemnify and hold CBS harmless from and against any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees arising out of the manufacture, production, sale and use of the Licensed Product or out of any breach by Licensee of any warranty or agreement made by Licensee herein.

(b)    CBS warrants that it has the right to enter into this Agreement and to grant Licensee the rights herein granted. CBS will at all times indemnify and hold Licensee harmless from and against any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees, arising out of the breach by CBS of any warranty or agreement made by CBS herein.

(c)    The indemnitee shall promptly notify the indemnitor of any claim or litigation to which the indemnity set forth in this paragraph applies, and that at the indemnitor's option, the indemnitor shall assume the defense of any such claim or litigation. If the indemnitor assumes the defense of any such claim or litigation the indemnitor's obligations with respect thereto shall be limited to the payment of any judgement, or settlement approved by the indemnitor in connection therewith.

10.    INSURANCE. Licensee will secure, at least thirty (30) days prior to the date of commencement of distribution of the Licensed Product, and will maintain throughout the License Term and throughout the subsequent sixty (60) day period referred to in subparagraph (a) of paragraph 12 hereof, a public liability insurance policy, including products liability coverage, in form acceptable to CBS, and having at least the following limits: $1,000,000 combined single limit for personal injuries and $500,000 combined single limit for property damage. The policy shall be secured and maintained at

Licensee's own expense, and shall include coverage of all parties required to be indemnified pursuant to paragraph 9 hereof, shall provide for coverage with respect to all claims arising at any time out of the use or possession, manufacture, advertisement, distribution or sale of any Licensed Product hereunder or during the aforesaid sixty (60) day period. The policy will include a provision requiring the insurance company to give CBS prompt notice of any revision, modification or cancellation thereof. It is specifically understood that CBS will be named as an additional insured in the policy. The policy will contain an endorsement deleting the condition thereof entitled "Other Insurance" as to any insurance in force for or in the name of CBS. Licensee shall furnish CBS with a certificate thereof promptly after securing the policy.

11.    TERMINATION.

(a)    In the event that (i) Licensee fails to place the Licensed Product on sale to the retail trade on the Initial On-Sale Date, (ii) Licensee fails to actively manufacture, advertise, distribute or sell the Licensed Product thereafter, (iii) Licensee fails to make any payment or furnish any statement within 60 days after due date in accordance herewith, (iv) Licensee fails to comply with any other of Licensee's obligations hereunder, (v) at any time a voluntary petition in bankruptcy shall be filed by Licensee, or at any time an involuntary petition in bankruptcy shall be filed against Licensee and shall not be dismissed within thirty (30) days thereafter, or if Licensee shall take advantage of any insolvency law, or if a receiver or trustee of any of Licensee's property shall be appointed at any time and such appointment shall not be vacated within thirty (30) days thereafter, (vi) Licensee fails to conform to the specifications furnished by CBS to Licensee or reduces the quality of the Licensed Product approved by CBS without prior consent, or (vii) Licensee fails to operate its business in the usual course or fails to pay its debts as they become due; then, in any of such event, in addition to any other rights of any nature that CBS may have at law or in equity, all monies then due, or to become due (including interest as set forth in paragraph 3) to CBS shall become immediately due and payable, and CBS shall have the right, at its option, to terminate this Agreement effective at any time upon notice to Licensee or to delete from the operation of this Agreement any element(s) of the Licensed Property and/or any Licensed Product.

(b)    (i)    In the event that Licensee is prevented from manufacturing or distributing the Licensed Product because of act of God; unavoidable accident; fire; epidemic; strike, lockout, or other labor dispute; war, riot or civil commotion; act of public enemy; enactment, rule, order or act of government or governmental instrumentality (whether federal, state, local or foreign); or other cause of a similar or different nature beyond Licensee's control, and such condition continues for a period of three (3) months or more, either party hereto shall have the right to terminate this Agreement effective at any time during the continuation of such condition by giving the other party at least thirty (30) days notice to such effect.

(ii)    In the event of termination of this Agreement pursuant to subdivision (i) of this subparagraph (b), the Advance Against Royalties, if any, and Guaranteed Minimum Royalty, if any, shall be reduced proportionately to the reduction of the License Term resulting from such termination.

12.    RIGHTS UPON EXPIRATION OR TERMINATION.

(a)    Upon expiration or termination of this Agreement, all rights granted to Licensee herein shall forthwith revert to CBS, with the following consequences:

(i)    CBS shall be free to license others to use the Licensed Property in connection with the manufacture, advertisement, distribution and sale of items similar to the Licensed Product in the License Area.

ILR#: 03M-CSI-PT
6/22/04

     (ii)    Licensee shall not thereafter manufacture, advertise, distribute or sell the Licensed Product in any place whatsoever, except that in the event or the expiration of this Agreement on the last day of the License Term hereof or the termination of this Agreement pursuant to any provision of subparagraph (b) of paragraph 11 hereof, Licensee may continue to sell any Licensed Product previously manufactured and on hand, on a non-exclusive basis during the period of sixty (60) days thereafter in accordance with all of the terms and conditions contained in this Agreement and at a price or prices which shall not, except with CBS prior written consent, be lower than the prevailing price charged to Licensee during the ninety (90) day period immediately preceding such expiration or termination.

     (b)    Thirty (30) days before the expiration of this Agreement, Licensee will furnish CBS a statement showing the number and description of the Licensed Product on hand or in process. If the Agreement is terminated pursuant to any provision of paragraph 11 hereof, such statement shall be furnished within ten (10) days after notice of termination is given .

     13.    TAXES.   Licensee will pay all taxes (other than net income taxes or other income taxes upon CBS withheld at the source) or other charges imposed upon Licensee (or upon CBS or others and to be collected from Licensee) by any law, ordinance or requirement of government or governmental instrumentality (whether federal, state, local or foreign) in connection with the licensing of the Licensed Property or the sale of the Licensed Product.

     14.    CODE OF CONDUCT.   Licensee agrees, on its own behalf and on behalf of any third-party manufacturer it uses, wherever located, that no child, forced or prison labor will be used in the performance of this Agreement whatsoever.   For this purpose, a "child" shall refer to any person younger than 15 (or 14 where local law allows) or, if higher, the local legal minimum age for employment or the age for completing compulsory education.   Manufacturers employing young persons who do not fall within the definition of "children" will also comply with any laws and regulations applicable to such persons. Additionally, all employees will be provided with a safe and healthy workplace environment in compliance with local laws, and all employees will work on a voluntary basis, and shall not be subject to physical or mental punishment of any kind.   Licensee and all manufacturers shall respect the rights of employees to associate, organize and bargain collectively in a lawful and peaceful manner, without penalty or interference.   Further, Licensee and all manufacturers shall comply with applicable wage laws and fair employment practices including the practice of non-discrimination on the basis of race, religion, national origin, political affiliation, sexual preference, or gender.   Licensee and all manufacturers will, at a minimum, comply with all applicable wage and hour laws and regulations, including those relating to minimum wages, overtime, maximum hours, piece rates and other elements of compensation, and provide legally mandated benefits.   Licensee and its manufacturers will further comply with all applicable environmental laws and regulations.   Licensee and its manufacturers shall submit to reasonable on-site inspections conducted by CBS or its designated representative, to ensure compliance with these provisions.

     15.    GENERAL CLAUSES.

     (a)    Except as otherwise specifically provided herein, all notices hereunder shall be in writing and shall be given by personal delivery, registered or certified mail or telegraph (prepaid), at the respective addresses hereinabove set forth, or such other address or addresses as may be designated by either party.   Such notices shall be deemed given when mailed or delivered to a telegraph office, except that notice of change of address shall be effective only from the date of its receipt.

(b)     Nothing herein contained shall be construed to constitute a partnership or joint venture between the parties hereto, and neither Licensee nor CBS shall become bound by any representation, act or omission of the other.   Licensee is an independent contractor in the manufacture, advertisement, sale and distribution of the Licensed Product.

(c)     A waiver by either party of any term or condition of this Agreement in any instance shall not be deemed or construed as a waiver of such term or condition for the future, or of any subsequent breach thereof.   All remedies, rights, undertakings, obligations and agreements contained in this Agreement shall be cumulative, and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either party.

(d)     CBS may assign its rights hereunder in whole or in part to any person, firm or corporation, and such rights may be assigned by any assignee thereof; provided, however, that no such assignment by operation of law or otherwise shall relieve CBS of any of its obligations hereunder.   Any assignment or other transfer, sublicense, or other encumbrance of this Agreement by Licensee by operation of law or otherwise without the prior written approval of CBS shall be void and of no effect; provided, however, that Licensee may sublicense its rights hereunder for any country in the License Area outside the United States to any subsidiary corporation of Licensee ("Distributor Company") but no such sublicense shall relieve Licensee of any of its obligations hereunder.

(e)     This Agreement has been entered into in the State of New York, and the validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York, with respect to the determination of any claim, dispute or disagreement, which may arise out of the interpretation, performance, or breach of this Agreement.

(f)     This Agreement contains the entire understanding of the parties hereto relating to the subject matter herein contained, and this Agreement cannot be changed or terminated orally.

(g)     The paragraph titles of this Agreement are for convenience only and shall not affect the interpretation of this Agreement or any paragraph thereof.

ILR#: 03M-CSI-PT
6/22/04

9

# EXHIBIT B

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process Transmittal**
02/01/2008
CT Log Number 513042781

TO:    Pui Mau William CHOW
        Planet Toys Inc.
        1/F, Block A, Chung Mei Centre,, 15 Hing Yip Street
        Kowloon

RE:    **Process Served in New York**

FOR:   Planet Toys Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Jeffrey Morris, On Behalf of Himself and All Other Persons Similarly Situated, Pltf. vs. Planet Toys, Inc. and CBS Broadcasting, Inc., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Return Form, Complaint |
| **COURT/AGENCY:** | Southern District of New York: United States District Court, NY Case # 08 CV 0592 |
| **NATURE OF ACTION:** | Product Liability Litigation - Breach of Warranty - CSI Fingerprint Examination Kit and/or CSI Field Kit, marketed as "high quality and control product" despite the fact they contained dangerous asbestos fibers - Class Action - Deceptive business practices - Fraudulent concealment - Prays for judgment declaring this action to be a proper class action and ordering Dfts. to cease and desist from its deceptive acts and practices, consumer fraud and unconscionable practices |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/01/2008 at 14:42 |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | Scott Kamber KamberEdelson, LLC 11 Broadway, 22nd Floor New York, NY 10004 212-920-3072 |
| **ACTION ITEMS:** | Telephone, Pui Mau William CHOW , 852-2797-6906 *Called 852-2797-6906 at 5:02 p.m. and left voice mail for Pui Mau William Chow* SOP Papers with Transmittal, via  Fed Ex International Priority , 790438849943 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Christopher Tilton |
| **ADDRESS:** | 111 Eighth Avenue New York, NY 10011 |
| **TELEPHONE:** | 212-894-8940 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern                 District of                 New York

JEFFREY MORRIS, On Behalf of Himself and All
Other Persons Similarly Situated,

**SUMMONS IN A CIVIL ACTION**

v.

PLANET TOYS, INC. and CBS BROADCASTING,
INC.

CASE NUMBER:

## 08 CV 0592

## JUDGE BAER

TO: (Name and address of Defendant)

Planet Toys, Inc., c/o CT Corp. System, 111 Eighth Ave., New York, NY
10011 CBS Broadcasting, Inc., c/o Corporation Service Co., 80 State
Street, Albany, NY 12207-2543

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)
Scott Kamber, Esq. KamberEdelson, LLC 11 Broadway, 22nd Fl New York,
NY 10004

an answer to the complaint which is served on you with this summons, within _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

DATE        JAN 2 3 2008
            Format m/d/yyyy

(By) DEPUTY CLERK

AO 440  (Rev.  8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE | Format m/d/yyyy |
|---|---|---|

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL 0 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                Format m/d/yyyy          *Signature of Server*


                                         *Address of Server*


(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



**08 CV 0592**

JEFFREY MORRIS, On Behalf of Himself
and All Other Persons Similarly Situated,

      Plaintiff,

  vs.

PLANET TOYS, INC. and CBS
BROADCASTING, INC.,

      Defendants.

**CLASS ACTION COMPLAINT**

## NATURE OF ACTION

1.    Plaintiff Jeffrey Morris, by and through his undersigned counsel, individually and on

behalf of the class of others similarly situated, brings this action against Defendants

Planet Toys, Inc. ("Planet Toys") and CBS Broadcasting, Inc. ("CBS") for deceptive

business practices in violation of the New York General Business Law, § 349 ("GBL

§349") and various common law torts.

2.    Plaintiff brings this action on behalf of all persons who purchased, or acquired as a gift, a

CSI Fingerprint Examination Kit and/or a CSI Field Kit.

3.    Despite marketing its toys as safe for children, Defendant Planet Toys distributed "CSI

Fingerprint Examination Kit" and "CSI Field Kit" ("CSI kits") which contained fibers of

tremolite, a form of asbestos, a toxic hazardous substance.

4.    The CSI kits contain, amongst other things, a white fingerprinting powder that has been

found to contain tremolite, a form of asbestos.

5.    Asbestos is a widely known carcinogen and it is well established that there are no safe

levels of asbestos. The inhalation or ingestion of asbestos fibers can cause serious long

term injury or death. Planet Toys' representation that its toys are safe for children is

fraudulent and deceptive.

6.    The CSI kits were sold at various retailers throughout the United States.

7.    Defendant CBS, the owner of the CSI name and/or brand, directly or through a license,

either designed, marketed, manufactured and/or sold said CSI kits.

8.    On December 24, 2007, Planet Toys announced a "stop sale" on the CSI kits. Despite the
"stop sale," Planet Toys has not offered to reimburse Plaintiff and the Class for the costs
of the CSI kits. Planet Toys has failed to compensate Plaintiff and the Class for their
damages or make them whole. Accordingly, Plaintiff brings this action to recover actual
and compensatory damages for himself and the Class.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.
§ 1332(d), because the matter in controversy in this class action exceeds $5,000,000,
exclusive of interest, costs, and attorney's fees, and there is diversity among the parties:
Defendant Planet Toys is a corporate resident of Delaware with its corporate office
located in New York, and CBS is a New York corporation with its headquarters in New
York, NY. Plaintiff is a resident of Glen Carbon, IL.

10.    Personal jurisdiction and venue are proper in this District, inasmuch as Defendants are
either incorporated in or conduct a substantial amount of business in this District.

## THE PARTIES

11.    Plaintiff resides in Glen Carbon, Illinois. Mr. Morris purchased a CSI Fingerprint kit on
or about December 20, 2007 at a Walgreen's in Glen Carbon, Illinois.

12.    Defendant Planet Toys manufactures and markets toys. Planet Toys is a Delaware
Corporation with its corporate offices located in New York, New York.

13.    Defendant CBS is a New York Corporation with its headquarters in New York, New
York.

## CLASS ACTION ALLEGATIONS

14.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of
Civil Procedure on behalf of himself and all others similarly situated who purchased or
acquired as a gift a CSI Fingerprint Examination Kit and/or a CSI Field Kit. Excluded
from the Class are (i) Planet Toys and any person who distributes or sells Planet Toys,
and (ii) persons who timely and validly exclude themselves from the Class.

15.    Members of the Classes are so numerous that joinder of all members is impracticable.

Thousands of people throughout the United States purchased the allegedly defective toys and are, thus, members of the Class. The exact number of the members of the Class and their addresses can be ascertained from the books and records of Defendants through discovery.

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely any individual members of the Class, including the following:

    (a)    whether the products possess a common defect;

    (b)    whether Plaintiff and members of the Class purchased or received as gifts the CSI kits;

    (c)    whether the Defendants are refusing to reimburse the Plaintiff and members of the Class for the cost of the defective product;

    (d)    whether the Defendants were obligated to disclose the existence of the defect, and if so, whether the Defendants failed to disclose the defect to the members of the Class;

    (e)    whether the Defendants had knowledge of the defect;

    (f)    whether the Defendants breached the implied warranties of merchantability and fitness;

    (g)    whether the Defendants extended express warranties to members of the Class, and if so, whether the Defendants breached those express warranties and wither the limitations on those express warranties are unconscionable and unenforceable;

    (h)    whether the Defendants' conduct as alleged in this Complaint has violated § 349 of the General Business Law

    (i)    whether the Class has been damaged and/or suffered irreparable harm and, if so, the extent of such damages and/or the nature of the equitable and injunctive relief to which each member of the Class is entitled; and

    (j)    whether the Defendants have acted and are about to act on grounds generally applicable to the Class, thereby making it appropriate to render final injunctive, or corresponding declaratory relief, with respect to the Class.

17. Plaintiff's claims are typical of the claims of the Class, and Plaintiff has the same interests as the other members of the Class.

18. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained able counsel with extensive experience in consumer fraud and class

action litigation. The interests of Plaintiff are coincident with, and not antagonistic to, the interests of the other members of the Class.

19.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

20.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.

21.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. The Class is readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. Plaintiff will encounter no difficulty in managing this action as a class action.

## SUBSTANTIVE ALLEGATIONS

**The Defendants Marketed the CSI Kits as "High Quality and Good Products" Despite the Fact That They Contained Dangerous Asbestos Fibers**

22.    Defendant Planet Toys' marketing campaign is built around ensuring parents that its toys are of the highest quality. For example, on its website, Defendant Planet Toys states:

"The goal of Planet Toys is to develop, produce and deliver innovative, unique and fun products for children around the world to enjoy over and over again."

"Planet Toys prides themselves on **high quality and good performing products in order to obtain 100% customer satisfaction.**"

(emphasis added)

23.    Plaintiff and the Class were deceived by the Defendants' representations and purchased the CSI kits believing the toys were safe and fun products for their children.

24.    However, despite the clear representations that the CSI kits were safe and of high quality,

Class Action Complaint                    4

the Defendants manufactured, distributed, and/or sold the Chinese-made toys that

contained dangerous asbestos fibers. The children that played with these toys have

inhaled and/or ingested asbestos fibers that can cause serious long-term injury or death.

**The Defendants Knew or Should Have Known of the Dangers of Asbestos in Children's Toys**

25. The inhalation of asbestos fibers can cause serious diseases of the lungs and other organs

that may not appear until years after the exposure has occurred.

26. The inhalation of asbestos fibers has been associated with many types of cancer,

including mesothelioma, lung cancer, laryngeal cancer, colon cancer, and esophageal

cancer, as well as asbestosis, which is a chronic and deadly fibrotic lung disease.

Tragically, most asbestos related diseases are incurable.

27. Very small exposures to asbestos can produce disease in humans. Thus, there is

widespread recognition of the fact that there is no such thing as a "safe level" of asbestos

exposure.

28. Accordingly, the Defendants knew or should have known that manufacturing, distributing

and selling CSI kits containing asbestos was dangerous and deadly and such toys were

not safe as the Defendants represented them to be.

## COUNT I

## VIOLATIONS OF SECTION 349 OF NEW YORK

## GENERAL BUSINESS LAW: DECEPTIVE ACTS AND PRACTICES

29. The allegations contained in each paragraph set forth above in this Complaint are

realleged and incorporated by reference as if fully set forth herein.

30. Defendants' unfair marketing of the products as a quality product and safe for children

constitutes unlawful, unfair, deceptive and fraudulent business practices in violation of §

349 of New York's General Business Law.

31. Defendants knew or should have known of the defect at all material times.

32. Defendants concealed or omitted mention of the presence of asbestos in the CSI kits to

consumers.

33.   The presence of asbestos in the CSI kits was material to consumers deciding to purchase the product.

34.   The unfair and deceptive trade acts and practices of Defendants have directly, foreseeably and proximately caused damages and injury to Plaintiff and the other members of the Class.

35.   Plaintiff and the other members of the Class have no adequate remedy of law.

36.   Plaintiff, on his own behalf and on behalf of the Class, seeks injunctive relief under § 349 of New York's General Business Law.

## COUNT II

## FRAUDULENT CONCEALMENT

37.   The allegations contained in each paragraph set forth above in this Complaint are realleged and incorporated by reference as if fully set forth herein.

38.   As alleged herein, on or about January 1, 2008, Planet Toys posted on their website a statement that a kit that was tested did not contain asbestos. At the time this representation was made, Planet Toys knew the true facts regarding the defect in its CSI kit, as detailed above, and knew of the potential ramifications of disclosing the defect to Plaintiff and Class members, but failed and/or refused to do so, fraudulently concealing the true facts.

39.   Planet Toys' willful concealment and failures to disclose were made with the intent to induce Plaintiff's and the other Class members' justifiable reliance, and in fact did so, as evidenced by their purchase of the CSI kit. In the alternative, reliance on the part of the Plaintiff and other members of the Class can be properly presumed.

40.   Plaintiff and other members of the Class, unaware of Defendants' concealment or suppression of said material facts, purchased the CSI kit, reasonably relying on the misleading representations and omissions of the Company. Plaintiff and other members of the Class could not have discovered, in the exercise of reasonable diligence, Planet

Toys' fraud and failures to disclose. Had Plaintiff and the other members of the Class known of the concealed facts, they would not have purchased the CSI kit.

41.    As a proximate result of the foregoing acts and omissions, Plaintiff and the other members of the Class have suffered damages.

## COUNT III

## BREACH OF IMPLIED WARRANTY

42.    The allegations contained in each paragraph set forth above in this Complaint are realleged and incorporated by reference as if fully set forth herein.

43.    The Defendants impliedly represented and warranted that the CSI kits were free of defects; merchantable; and fit for their intended purpose – as toys for children. The defendant breached these representations and implied warranties. The Defendants made and/or allowed these misrepresentations to be made with the intent of inducing Plaintiff and the other members of the Class to purchase the CSI kits. If Plaintiff and the members of the Class had known the true facts, they would not have purchased the toys.

44.    Plaintiff and members of the Class have been damaged and have suffered direct economic loss in that they purchased the products that were defective as set forth above and that failed to comport with the aforementioned warranties.

## COUNT IV

## STRICT LIABILITY

45.    The allegations contained in each paragraph set forth above in this Complaint are realleged and incorporated by reference as if fully set forth herein.

46.    Defendants are strictly liable for damages because (a) they placed the defective product, an asbestos containing toy, in the stream of commerce; (b) the condition of the products, containing asbestos, rendered them unreasonably dangerous; (c) the condition existed when the product left the control of Defendants; (d) the Plaintiff and other members of the Class could not have discovered, in the exercise of reasonable diligence, Defendants'

fraud and failures to disclose and (d) the condition was a proximate cause of the Plaintiffs' injuries.

47.    Plaintiff and other members of the Class may recover for purely economic loss because their damages are proximately caused by the Defendants intentional, false representation that the products were safe, when in fact, they are not.

48.    Plaintiff and members of the Class have been damaged and have suffered direct economic loss in that they purchased the products that were defective as set forth above.

## COUNT V

## NEGLIGENT PRODUCT DESIGN

49.    The allegations contained in each paragraph set forth above in this Complaint are realleged and incorporated by reference as if fully set forth herein.

50.    The Defendants have a nondelegable duty to design reasonably safe products for children.

51.    The defendants also have a duty to test their products.

52.    The Defendants breached their duty when they failed to exercise reasonable care in the design of the product by allowing asbestos fibers to be used in the fingerprinting powder.

53.    The Defendants knew or should have known of the risk posed by the product design, *i.e.* the use of asbestos fibers in children's toys.

54.    Plaintiff and members of the Class have been damaged and have suffered direct economic loss in that they purchased products that were defective as set forth above.

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for judgment, as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as a representative of the Class under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Ordering Defendants to cease and desist from its deceptive acts and practices, consumer fraud and unconscionable commercial practices;

Class Action Complaint                          8

(c)    Ordering Defendants to provide a reasonable means for purchasers of CSI kits or recipients of CSI kits as gifts to be reimbursed for the products;

(d)    Ordering Defendants to disgorge all profits made as a result of its practices;

(e)    Awarding plaintiff and the members of the Class actual damages;

(f)    Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' and experts' fees, and other expenses incurred in prosecuting this action; and

(g)    Granting pre-judgment interest and such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

January 18, 2008                    By: _Dana Rubin_ _____

KAMBEREDELSON, LLC
Scott A. Kamber (SK 5794)
Dana B. Rubin (DR 8451)
11 Broadway – 22nd Floor
New York, NY 10004
212.920.3072
212.202.6364 (Fax)
drubin@kamberedelson.com
skamber@kamberedelson.com

GOLDENBERG HELLER ANTOGNOLI
 ROWLAND SHORT & GORI, P.C.
Randy L. Gori
2227 South State Route 157
Edwardsville, IL 62025
(618) 656-5150
(618) 656-8169 (Fax)
randy@ghalaw.com

GLASSMAN, EDWARDS, WADE & WYATT, P.C.
B.J. Wade
26 N. Second Street
Memphis, TN 38103
901.527.4673
901.521.0940 (Fax)

AUDET & PARTNERS, LLP.
William M. Audet
221 Main Street, Suite 1460
San Francisco, California 94105
415.568.2555
415.568.2556 (Fax)
waudet@audetlaw.com